OLE C. JOHNSON v. MUDBADEN SULPHUR SPRINGS COMPANY.[1]

February 6, 1931.

No. 28,239.

*Cobb, Hoke, Benson, Krause & Faegre, Tracy J. Peycke,* and *Joseph Hilgers,* for appellant.

*Alphonse A. Tenner, Paul M. Smiler,* and *F. J. Donahue,* for respondent.

HOLT, J.

Defendant appeals from an order denying its motion in the alternative for judgment or a new trial.

The action was to recover damages for the loss of plaintiff's right leg, the allegations being that through the negligence of defendant's servant plaintiff sustained a fall fracturing the condyle of the right femur at the knee joint, which fracture, because of failure of de-

[1]Reported in 234 N. W. 680.

fendant's physician to diagnose and properly treat, developed cancer of the bone necessitating amputation of the leg above the knee. The facts as testified to by plaintiff are in substance as follows:

In April, 1926, he fell down a stairway in the store where he worked as clerk or salesman and injured his right knee but not to such extent that he was disabled. He was then about 50 years old and somewhat rheumatic. Later on towards the fall the knee became more painful, and he had to resort to crutches. He took treatments from chiropractors and others but obtained no relief. On the 16th of March, 1927, he entered defendant's institution, which professes to treat various forms of rheumatism and arthritis by vapor, sulphur mud baths, and massage. He took these baths each day, including the morning of March 24, 1927, when he claims to have received the injury for which the suit is brought. In the usual course of giving treatments the attendants of defendant placed him in the vapor bath for five or eight minutes, then carried him to the mud bath and placed him therein, covering the knee and perhaps other parts of the body with warm or hot sulphur mud, keeping him thus covered for about the same length of time, then carried him to and placed him in the hot water tub, letting him remain therein some five or ten minutes, and from there he was carried or wheeled to the massage room. He had always been helped in and out of each bath or treatment previous to the morning of March 24, and he was placed in the hot tub bath that day by the head attendant, Zarth. He testified that when he had remained some minutes in the tub he heard Zarth say that it was time to get out. One end of the tub was against the wall, and plaintiff was sitting in it facing the wall. Plaintiff says Zarth was behind him. How far away he does not know. He did not see him and made no effort to turn his head to see where he was; and without waiting to see whether Zarth was coming to help him out plaintiff undertook to get out, taking hold of the rim of the tub with his hands and stepping over with his right leg first. As he placed the weight of his body on that leg it "caved" and he fell down with the leg under him. He also says that feeling him-

self going down he sought to save himself by grasping the pipe supplying the tub with water, but it being hot he let go. The pipe ran along the wall about the height of the tub.

From X-ray pictures taken in May, July, August, and September, following, two doctors for plaintiff gave the opinion that plaintiff's fall fractured the condyle of the femur at the right knee, and because this fracture was not discovered and immobilized irritation caused a malignant tumor of the bone to form which necessitated the amputation. Plaintiff also called Zarth as his witness, but according to Zarth there was no fall and not the slightest excuse for even suggesting any negligence of any attendant. Plaintiff remained at the defendant's institution until May, when he went to Minneapolis and was treated by other physicians and surgeons until the amputation, in October.

The complaint and also the charge of the court is susceptible of the construction that plaintiff seeks to recover upon two separate acts of negligence, viz. the alleged negligence of Zarth in not preventing plaintiff's fall, and upon the alleged malpractice of defendant's physician in failing to diagnose the fracture and properly treat it. However plaintiff now disclaims recovery predicated upon the alleged malpractice and, we think, rightly asserts that if defendant's negligence caused plaintiff's fall and resultant injury, it is liable for all the consequences flowing therefrom, including malpractice of any doctor treating him for the injury, if such there was. Goss v. Goss, 102 Minn. 346, 113 N. W. 690; Fields v. Mankato E. T. Co. 116 Minn. 218, 133 N. W. 577. So the cause of action here must be based wholly upon the bath tub incident of the morning of March 24.

Defendant had a competent person in attendance safely to give the baths plaintiff was then taking. There is neither pleading nor proof to the contrary. Zarth had for seven days assisted plaintiff in and out of his baths. According to plaintiff's testimony, Zarth had no notice that plaintiff this time intended to get out unaided. Zarth's statement that it was time for plaintiff to get out implied no command to do so before Zarth could reach him. Zarth could not reasonably anticipate that plaintiff would step out unaided un-

less plaintiff knew that he could do so safely. Both knew'that these baths were weakening, both knew that plaintiff had a bad knee; but plaintiff certainly knew better than Zarth whether he could safely place his weight on his right leg. If we assume Zarth to have been negligent in announcing to plaintiff that it was time to come out of the tub before being right there to lift him out, it certainly was equally a negligent act for plaintiff to attempt to get out before Zarth was there; and so there could be no recovery. But we need not place the decision either upon contributory negligence or assumption of risk, for we are unable to find anything in what Zarth said or did or omitted to say or do, taking plaintiff's version as entirely true, which would justify a finding of negligence on Zarth's part. No negligence of defendant is even hinted at in the proof except such as may be found in the words and conduct of Zarth.

We have considered the cause of action wholly upon plaintiff's testimony as to the claimed fall and alleged negligence of Zarth. And of course that cannot be made stronger to establish negligence at another trial except by a radical change thereof, and that is unthinkable. There can be no claim of inadvertence or innocent mistake in that testimony, for it was most painstakingly elicited and re-elicited at what were deemed vital points by plaintiff's counsel. It is true plaintiff also had Zarth as his witness, but Zarth not only flatly contradicted plaintiff, he wholly freed himself and defendant from any blame in what occurred when plaintiff undertook to step out of the tub the morning in question. Being entirely clear that no cause of action could originate in this bath tub incident, it would serve no purpose to consider any error in the conduct of the trial. There should have been a directed verdict as defendant requested when the testimony closed.

The order is reversed and the cause is remanded with direction to enter judgment in favor of defendant notwithstanding the verdict.